IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CARLOS GONZALEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-14-0396 |
| | § | |
| ABLE HUERTA, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

Carlos Gonzalez sued Abel Huerta, a police officer with the Spring Branch Independent School District, alleging that Huerta's conduct violated Gonzalez's constitutional rights to be free from unlawful detention and arrest and from excessive force. Huerta answered, asserted qualified immunity, and later moved for summary judgment on that basis. (Docket Entry No. 12). Gonzalez responded and Huerta replied. (Docket Entries Nos. 17, 18). The court held a hearing at which counsel presented oral argument on the motion. The court ruled from the bench, granting the summary judgment motion and stating the reasons. The court now issues this Memorandum and Opinion explaining the reasons in more detail. Based on this ruling from the bench and this Memorandum and Opinion, the court enters final judgment by separate order.

**I.    Background**

On July 10, 2012, Abel Huerta, an officer in the Spring Branch Independent School District police service, was dispatched to respond to a call about a suspicious person sitting in a vehicle parked in the Bendwood Elementary School parking lot. The call came from a school employee, who described a gold SUV parked on the east side of the school building. Huerta knew that there

had been a series of recent car burglaries in that parking lot. At the parking lot, Huerta saw a man sitting in a gold SUV backed into a parking space. Huerta approached the SUV and asked the person sitting in the driver's seat, later identified as Carlos Gonzalez, for identification. Gonzalez repeatedly refused. Instead, he demanded to know Huerta's reason for asking to see identification. Gonzalez took out his cell phone and placed a call, but disconnected the call without a conversation.

Huerta called for another officer and decided to detain Gonzalez to investigate further. Gonzalez struggled when Huerta tried to handcuff his right hand. Huerta managed to handcuff Gonzalez's hands in front of his body. Huerta pulled Gonzalez out of the SUV, performed a *Terry* patdown to search for weapons and contraband, took Gonzalez's license out of his pocket, and put him in the back of the patrol car. A second officer, Raymond Gonzalez, arrived shortly afterwards.

Both officers spoke to Carlos Gonzalez about the importance of presenting identification to police officers on request. They also spoke to Gonzalez's daughter, who was still in the SUV. Gonzalez's wife, Nadia Gonzalez, came out of the school and talked to the officers. They told her that her husband had refused to identify himself and that they had detained him pending further investigation into the report of a suspicious vehicle. Nadia Gonzalez explained that she worked at the school and that her husband was waiting to pick her up. With this confirmation that Carlos Gonzalez was not engaged in criminal activity, the officers released him with a Class C misdemeanor citation for failure to identify. The citation was later dismissed due to a clerical error.

Gonzalez spent about 30 minutes in the back of the patrol car before he was released. He complained to his wife that the handcuffs were too tight, but did not complain to the officers or mention any other pain.

2

Gonzalez sued Huerta, alleging illegal detention, false arrest, and excessive force, in violation of 42 U.S.C. § 1983. He alleged that he suffers from preexisting back problems which Huerta made worse by using excessive force to handcuff and pull him from the vehicle.

This summary judgment motion on qualified immunity followed.

## II.     The Applicable Legal Standards

### A.     Summary Judgment

Summary judgment is appropriate if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *See Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine dispute of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56(c) burden, the nonmoving party must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

### B.     Qualified Immunity

Qualified immunity shields government officials from liability when they are acting within their discretionary authority and their conduct does not violate clearly established statutory or constitutional law. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Flores v. City of Palacios*, 381 F.3d 391, 393–94 (5th Cir. 2004). A court must determine whether a statutory or constitutional right would have been violated on the facts alleged, *Saucier v. Katz*, 533 U.S. 194, 200 (2001); *Aucoin v. Haney*, 306 F.3d 268, 272 (5th Cir. 2002), and whether the defendant's actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Flores*, 381 F.3d at 395 (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). If the law was clearly established at the time of the incident, the court must decide whether the defendant's conduct was objectively reasonable. *Aucoin*, 306 F.3d at 272. An official's conduct is objectively reasonable unless a reasonable officer in the defendant's circumstances would have known that the conduct violated the Constitution. *Hampton v. Oktibbeha Cnty. Sheriff Dep't*, 480 F.3d 358, 363 (5th Cir. 2007). Even if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable. *Hernandez ex. rel. Hernandez v. Tex. Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 879 (5th Cir. 2004). "[T]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting

'all but the plainly incompetent or those who knowingly violate the law.'" *Mangieri v. Clifton*, 29 F.3d 1012, 1017 (5th Cir. 1994) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).

## III.   Discussion

Gonzalez argued that Huerta did not have reasonable suspicion to conduct an investigatory detention or authority to arrest or detain him, and that Huerta used excessive force in doing so. Both the facts in the summary judgment record and the law undermine Gonzalez's claims and arguments.

First, Huerta had authority to ask Gonzalez for identification. Section 37.105 of the Texas Education Code states that "[t]he board of trustees or its authorized representative may refuse to allow a person without legitimate business to enter on property under the board's control and may eject any person from the property on the person's refusal to leave peaceably on request." It also states that "[i]dentification may be required of any person on the property." The Bendwood Board of Trustees had hired Huerta as a security officer; he was their authorized representative for the purposes of § 37.105.

Gonzalez argued that under § 37.105, the only remedy for his refusal to produce identification was to eject him from the school parking lot. Gonzalez cited no authority to support this contention. Other sections of the Texas Education Code state that the State's criminal laws apply on school property, and that a school district's governing board may adopt rules to promote safety and welfare on school property and authorize representatives to enforce these rules. TEX. EDUC. CODE §§ 37.101 *et seq.*

Gonzalez also argued that Huerta's only basis for detaining and handcuffing him was his refusal to provide identification. The record evidence showed that Huerta did not detain Gonzalez simply because he failed to provide identification. Instead, the evidence showed that Huerta had a

5

reasonable basis to suspect a connection between Gonzalez and the recent car burglaries in the school's parking lot and to investigate further. Gonzalez's car matched the description of the suspicious vehicle dispatch had relayed based on the call from the school employee. (Docket Entry No. 12, Ex. A). There had been a series of recent car burglaries in that parking lot. Gonzalez's car was parked facing out and Gonzalez had been sitting in it for an extended period with the engine off. When Huerta spoke to him, Gonzalez was uncooperative and argumentative. Gonzalez pulled out his phone and made a call, but hung up without talking. (*Id.*). Huerta had a reasonable basis to detain Gonzalez for further investigation.

Gonzalez relied on *Brown v. Texas*, 443 U.S. 47 (1979) and *Wade v. State*, 422 S.W.3d 661, 674–75 (Tex. Crim. App. 2013), for his assertion that he was illegally detained. In *Brown*, the only basis for the officer's suspicion was the plaintiff's location in a high-crime area and the fact that he had been seen with a second person. The plaintiff's behavior was no different from that of other persons in the area. The officer admitted that he stopped the plaintiff only to ask for identification, which the plaintiff refused to provide. The Supreme Court held that this was not enough for a reasonable suspicion justifying detention. Huerta had more specific information than the officer in *Brown*, information that provided a basis for reasonable suspicion about Gonzalez.

In *Wade v. State*, an officer detained and searched a man after finding him in his car near a boat dock, which the officer admitted was not a high-crime area. The man provided identification and an explanation for his presence, but refused to consent to a search and appeared "nervous." The Texas Court of Criminal Appeals noted that the plaintiff had a legal right not to consent to a search and held that nervousness and refusal to consent to a search do not by themselves give rise to a

reasonable suspicion of criminal activity. The record evidence shows a much stronger basis for Huerta's suspicion than the officer had in *Wade*.

These cases do not support Huerta's argument that Gonzalez is not entitled to qualified immunity. The tip from a school employee, the history of recent car burglaries in the same parking lot, Gonzalez's refusal to show his identification or explain his presence, and the placement and orientation of his car gave Huerta reasonable suspicion that justified detaining Gonzalez for further investigation.

Gonzalez also alleges that Huerta used excessive force in detaining him, handcuffing him, and pulling him out of the SUV, twisting his shoulder in a way that exacerbated Gonzalez's existing back injury. An excessive force claim requires (1) an injury, (2) resulting directly and only from the use of force that was clearly excessive to the need, (3) the excessiveness of which was objectively unreasonable. *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012) (citing *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009)).

Handcuffing is generally not in itself excessive force. *See Johnson v. Morel*, 876 F.2d 477, 480 (5th Cir. 1989); *Neague v. Cynkar*, 258 F.3d 504, 508 (6th Cir. 2001) ("the handcuffing of a person in the course of an otherwise lawful arrest fails, as a matter of law, to state a claim for excessive force"). In the context of Huerta's reasonable suspicion about Gonzalez and of Gonzalez's struggle when Huerta tried to handcuff him, the use of some force to handcuff him and pull him from his SUV was not unreasonable. *See Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002) (the officer did not use excessive force when he twisted the plaintiff's arm behind his back to handcuff him in order to effectuate arrest); *Walcotte v. Wicks*, 2009 WL 1373601 at *4 (S.D. Tex. May 15, 2009) (unreported) (the plaintiff's complaints of some pain and minor cuts from being

handcuffed too tightly did not establish a claim of excessive force). The record shows that during the 30 minutes Gonzalez was in handcuffs, he did not complain to the officers about pain, and complained to his wife only about the handcuffs being tight. The Fifth Circuit has held that "handcuffing too tightly, without more, does not amount to excessive force." *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001).

The uncontroverted summary judgment evidence does not support Gonzalez's allegation that the amount of force Huerta used was an objectively unreasonable response to Gonzalez's actions. Because the amount of force used was objectively reasonable, Huerta is entitled to summary judgment on this claim.

**IV.    Conclusion**

Huerta is entitled to summary judgment on all of Gonzalez's claims. Final judgment is entered by separate order.

SIGNED on April 10, 2015, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge